BEFORE THE JUDICIAL PANEL ON
MULTI-DISTRICT LITIGATION

In re:                                    )
                                          )         MDL Docket No. 2617
ANTHEM, INC. CUSTOMER DATA                )
SECURITY BREACH LITIGATION                )

PLAINTIFF JOHN DOE'S RESPONSE IN OPPOSITION TO MOTION BY MICHAEL
S. WEINBERGER FOR TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT
OF INDIANA AND IN SUPPORT OF CENTRALIZATION IN THE CENTRAL
DISTRICT OF CALIFORNIA

NOW COMES Plaintiff John Doe, by and through the undersigned counsel, and in opposition to Michael S. Weinberger's motion for transfer to the Southern District of Indiana and in support of transfer of all related actions to the Central District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407, and states as follows:

1.  This proposed MDL currently consists of 59 class actions filed against Anthem, Inc. and several of its subsidiary companies (collectively referred to "Anthem") to redress Anthem's failure to safeguard the personal and medical information ("PII/PHI") of over 80 million Anthem members residing throughout the United States.[1] The factual background relating to these Related Actions has been sufficiently covered in the various filings and is omitted here for the sake of brevity.

2.  On February 9, 2015, Plaintiff John Doe filed a class action that is currently pending in the United States District Court for the Central District of California (Case No: 2:15-cv-00934). As alleged therein, Plaintiff Doe seeks certification of a national class and a California subclass.

---

[1] A list of the 59 cases filed as of February 25, 2015 is attached to the Notice of Appearance filed by Craig A. Hoover (Hogan Lovells US LLP) on that same date. The 59 cases are hereinafter referred to as the "Related Actions."

1

3. Plaintiff Doe agrees that the transfer of all Related Actions in this MDL for coordinated or consolidated proceedings is appropriate because all of the cases arise from, and are based on, the same core facts – i.e., Anthem's failure to safeguard adequately its health plan members' PII/PHI and to provide timely notification of the massive data breach that, based on information provided by Anthem to date, commenced in late 2014 and continued through early 2015.

4. Plaintiff Doe, however, disagrees that the Related Actions should be transferred to and consolidated in the Southern District of Indiana. While Anthem's national headquarters are located in that district, that fact alone does not support transfer to Anthem's home court. As explained below, Plaintiff Doe respectfully submits that the Central District of California is the more appropriate forum for transfer and consolidation because: (1) a large percentage of the Data Breach victims are located in California; and (2) many of the relevant documents and witnesses are most likely located in the Central District of California.

5. Anthem is one of the largest health benefits companies in the United States. According to its web site, Anthem provides commercial health insurance products in the following fourteen states: California, Colorado, Connecticut, Georgia, Indiana, Kentucky, Maine, Missouri, Nevada, New Hampshire, New York, Ohio, Virginia and Wisconsin. *See* Anthem's "Corporate Fact Sheet," accessible at http://www.antheminc.com/NewsMedia/FrequentlyRequestedMaterials/StatsFacts/index.htm.

6. The Data Breach at issue in the Related Actions involved all Anthem product lines and included the unauthorized release of the PII/PHI of approximately 80 million current and former Anthem members. *See* anthemfacts.com. Most recently, in his article published February 28, 2015, Alan Greenberg (SCMagazine) reports that an Anthem spokesman has

confirmed in an email that "78.8 million consumers may have had personal information viewed by 'hackers who had accessed [Anthem's] database'" and that "60-70 million individuals are current or former Anthem members." *See* http://www.scmagazine.com/victims-of-the-anthem-breach-stretch-across-multiple-states/article/400489/ (last visited March 3, 2015). The balance of the 78.8 million total victims "consist[s] of current and former non-Anthem Blue Cross Blue Shield members 'who used their Blue Cross and Blue Shield insurance in a state where Anthem operates over the last [ten] years.'" *Id*.

7. Further, Mr. Greenberg provides the following state-by-state breakdown of the individuals impacted by the Data Breach:

- Arkansas:         39,000
- **California:      13.5 Million**
- Connecticut:      1,716,463
- Delaware:         62,051
- Georgia:          3,726,249
- Hawaii:           18,000
- Illinois:         215,000
- Iowa:             172,727
- Kansas:           389,432
- Louisiana:        277,000
- Maine:            531,000
- Massachusetts:    967,000
- Michigan:         636,075
- Minnesota:        300,000

3

- Missouri: 2 Million
- New Hampshire: 667,866
- New Mexico: 11,600
- North Carolina: 775,606
- North Dakota: 27,000 plus
- Pennsylvania: 750,000
- Rhode Island: 80,000
- Vermont: 71,000
- Virginia: 3.77 Million

*Id*. (emphasis added). Mr. Greenberg's article provides links to his supporting evidence, which consists of a combination of news articles and press releases issued by a number of state Attorneys General.

8. Clearly, a large percentage of the Data Breach victims are located in California. Indeed, the 13.5 million California victims represent roughly 44% of the total number of the state-by-state breakdown of victims identified to date. Working with the total number of 78.8 million victims noted at the start of Mr. Greenberg's article (and confirmed by an Anthem spokesperson), the 13.5 million California victims represent roughly 17.25% of the total population of victims. No other state comes remotely close to that percentage.

9. While the total number of Indiana victims has not been identified to date, various resources indicate that the number most likely does not exceed 3 million, i.e., less than 4% of the total number of Data Breach victims. Specifically, Indiana has a population of roughly 6.5 million [2] and a recent Kaiser study shows that 58% of the Indiana population has

---

[2] *See* https://suburbanstats.org/population/how-many-people-live-in-indiana.

4

private/commercial insurance,[3] resulting in roughly 3,770,000 commercially insured individuals in Indiana. In turn, Anthem's Corporate Fact Sheet (cited above) states that Anthem has a 48% share of the commercially insured market in Indiana. Working with those numbers, the total number of current Anthem members in Indiana would be 1,809,600 (3,770,000 x 48%). Even assuming that all current members were victims of the Data Breach, and then adding another 1 million former members as victims would result in less than 3 million victims in Indiana.[4]

10.     Given the corporate history of Anthem, the fact that the number of California victims dwarfs the number of Indiana victims (as well as the number of victims in any other state) is not surprising. Specifically, in 2004 Anthem acquired Wellpoint Health Networks Inc. ("Wellpoint") in a transaction valued at $20.8 billion. At the time, Wellpoint was a larger company than Anthem, and one of Wellpoint's largest subsidiaries was Blue Cross of California with over 7 million California health plan members. Indeed, upon acquiring Wellpoint, Anthem more than doubled its total health plan membership (from 11.9 million to 27 million) and changed its corporate name to Wellpoint, Inc. Ten years later, on the eve of, if not during the Data Breach, Anthem dropped the Wellpoint name and went back to naming itself Anthem, Inc.[5]

---

[3]     *See* Health Insurance Coverage of the Total Population, available at http://kff.org/other/state-indicator/total-population/.

[4]     Anthem possesses the records that would identify the number of the Data Breach victims residing in Indiana and can correct these numbers as appropriate at or prior to the MDL hearing.

[5]     *See* Company History at http://www.antheminc.com/AboutAntheminc/CompanyHistory/index.htm; *see also* Wellpoint Health Networks Inc. 2003 Form 10-K at 1-3, 48 (providing membership numbers by state and description of pending merger with Anthem); Anthem Inc. 2003 Form 10-K at 1, 6-7 (providing membership numbers by state and describing pending merger with Wellpoint); Wellpoint Inc. 2004 Form 10-K at 3 (providing total membership number of new combined company). *See Generally* "Anthem, Wellpoint Merger is Complete," Lisa Girion, Los Angeles Times (December 4, 2004), available at http://articles.latimes.com/print/2004/dec/01/business/fi-anthem01.

11. At the time of Anthem's acquisition of Wellpoint in 2004, Wellpoint maintained its principal executive office in Thousand Oaks, California where, upon information and belief, Wellpoint housed its IT Systems and related membership databases.[6] In light of Anthem's corporate history and continued presence in Thousand Oaks, California (a suburb of Los Angeles), many relevant documents and witnesses regarding the Data Breach most likely will be located within the Central District of California.

12. Anthem, of course, can identify the location of its key witnesses and relevant documents. But even assuming that some of those witnesses and documents are located in the Southern District of Indiana, the scale should not be tipped in favor of transfer to that district.[7] Given the tremendous advancements in technology, most if not all document productions in large-scale cases such as this one are performed electronically, eliminating the burden of having to produce a warehouse full of boxes of documents and the need for expensive and time-consuming on-site document reviews by teams of lawyers. As for witnesses, pre-trial

---

[6] *See* Wellpoint Health Networks Inc. 2003 Form 10-K at 1, 38.

[7] A review of LinkedIn reveals that some of the likely key defense witnesses are located throughout the country. For example, likely witnesses include: Tom Miller, Senior Vice President and Chief Information Officer (Atlanta, GA); Roy Mellinger, Vice President IT Security and Chief Information Security Officer (Indianapolis, Indiana); Chris Burnett, Director of Information Security (Atlanta, GA); Russ Martin, Senior Manager III, Information Security-Infrastructure Security (Atlanta, GA); Stephen Moore, Director of Information Security-Detection Analysis Response Team (DART)(Indianapolis, Indiana); Daniel Trapper, Chief Strategist, IT Security Technology (Los Angeles, California); James Tahvili, IT Manager (Los Angeles, California); Chita Martinez, Manager Information Security (Los Angeles, California); Matt Klein, Director of Information Security (Web access management, encryption, goal setting/planning) (Mount Pleasant, South Carolina); Rick Witherow, Director of Technology-Information Security (Richmond, VA); Pam (Livingston) Lindemoen, Director, Information Security Vulnerability Management (Tampa/St. Petersburg, Florida); and Leke Adesida, Staff Vice President Technology Risk Management (Washington, D.C.). *See* collection of LinkedIn profiles (page one only) attached hereto as Exhibit 1.

depositions most often occur at the location of the witness irrespective of where the case is pending.

13. Transfer and consolidation of the Related Actions in the Central District of California will not burden Anthem. It has a major presence in California and has earned substantial profits there since acquiring Wellpoint in 2004. Having voluntarily entered and remained in the California marketplace via a $20.8 billion transaction, it has no credible basis to argue that fairness compels transfer and consolidation in Indiana.

14. At bottom, principles of fairness tip the scale in favor of transfer and consolidation in the Central District of California. As a result of the Data Breach, the personal and medical information of 13.5 million Californians has been released to unauthorized persons. Rather than allow Anthem to defend itself in its home court, fairness requires Anthem to answer for its actions (or inactions) where the gravity of harm has been inflicted. And while Anthem has harmed its members throughout the country, ground zero of that harm lies within California.

15. Of the 59 cases filed to date, 21 are pending in California (8 in the Central District, 7 in the Southern District and 6 in the Northern District).[8] Given Anthem's substantial ties to Thousand Oaks, California (a suburb of Los Angeles), the Central District is the more appropriate venue for transfer and consolidation in California. Moreover, the Central District is well equipped to handle this complex litigation, and, notably, is the venue for the *In Re Wellpoint, Inc. (aka Anthem, Inc.) Out-of-Network "UCR" Rates Litigation*, MDL No. 2074.

16. The Honorable Michael W. Fitzgerald, who currently presides over the first-filed Anthem Data Breach case (*see Kirby v. Anthem, Inc.*, C.D. California, Case No. 2:15-cv-00820), is a well-respected judge with extensive experience in handling class actions. *See, e.g., Cabral v.*

---

[8] The numbers presented are based on the cases identified in the Notice of Appearance filed by Craig A. Hoover (Hogan Lovells) on February 25, 2015.

*Supple*, LLC, No. 12-0085 (C.D. Cal.); *Paige v. Consumer Programs, Inc.*, No. 07-2498 (C.D. Cal). Further, Judge Fitzgerald does not at this time have an MDL assigned to his docket.

WHEREFORE, Plaintiff John Doe respectfully requests that the Panel enter an order centralizing all Related Actions, along with any future actions arising out of the same or similar facts, in the Central District of California before the Honorable Michael W. Fitzgerald.

Respectfully submitted,

RIDOUT LYON + OTTOSON, LLP

Dated: March 3, 2015

*/s/ Caleb Marker*
Christopher P. Ridout, Esq.
Caleb Marker, Esq.
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802
(562) 216-7380